IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY SIDES, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2:18-cv-145 |
| | ) |
| v. | ) Magistrate Judge Patricia L. Dodge |
| | ) |
| PENNSYLVANIA DEPT. OF CORR., | ) |
| *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[1]

For the reasons that follow, the Motion for Summary Judgment of Defendant Darla
Cowden (ECF No. 120) is denied.

### I.    Introduction

Plaintiff, Anthony Sides, is an inmate currently housed at SCI Pine Grove. He is
proceeding *pro se* in this civil action, which he brings under 42 U.S.C. § 1983. During all events
in question, Plaintiff was housed at SCI Fayette in its Restricted Housing Unit ("RHU"). He filed
his Amended Complaint, which is the operative complaint, on June 20, 2018. (ECF No. 31).
Defendant Cowden, who is a Physician Assistant at SCI Fayette, is one of several defendants
named in the Amended Complaint.

---

[1]    In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily
consented to have a United States Magistrate Judge conduct proceedings in this case. Therefore,
the undersigned has the authority to decide dispositive motions and to eventually enter final
judgment.

Plaintiff brings two claims against Defendant Cowden. In his first claim, he alleges in the Amended Complaint that she was deliberately indifferent to his serious medical needs in violation of his rights under the Eighth Amendment because she denied and/or delayed medical treatment to him for his fractured ribs. (ECF No. 31, ¶¶ 10-25). Specifically, Plaintiff alleges that he fell from his bed on May 19, 2017 and, as a result, he fractured his ribs and exacerbated a pre-existing injury to his back. (*Id.*, ¶¶ 10, 12). He alleges he informed Defendant Cowden of how and where he injured himself on May 22, 2017 and that she denied and/or delayed him medical care until X-rays that were taken in late June 2017 (approximately 39 days after he injured himself) confirmed that his ribs were fractured. (*Id.*, ¶¶ 13-25). In his second claim, Plaintiff alleges that Defendant Cowden violated the right to privacy afforded to him by the Fourteenth Amendment because information about his sexually transmitted disease ("STD"), and his treatment related to it, were disclosed to other inmates and staff during the sick call visits she conducted at his cell door. (*Id.*, ¶¶ 26-36).

Presently before the Court is Defendant Cowden's Motion for Summary Judgment (ECF No. 120) and supporting documents (ECF Nos. 121-122). Plaintiff filed a brief in opposition to summary judgment (ECF No. 141) and supporting documents (ECF No. 140, 141-1). Defendant Cowden opted not to file a reply. (*See* ECF No. 146).

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any

2

element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories...sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F. App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

## III. Discussion

### A. Plaintiff's Eighth Amendment Claim

#### 1. Relevant Facts[2]

On Monday, May 22, 2017, Defendant Cowden saw Plaintiff at his cell door in response to a sick call request. In his affidavit, Plaintiff states that it was during this visit that he first informed her that he fell out of his bed, injured his ribs, and aggravated a pre-existing injury he sustained many years earlier as a result of a motor vehicle accident. According to Plaintiff, Defendant Cowden did not visually or physically examine him and accused him of malingering and trying to get medication to get high.[3] He told her that that was not the case and that he was in severe pain. (Pl's Aff., ¶¶ 8-10).

Defendant Cowden disputes Plaintiff's version of events and maintains that he did not tell her that he fell out of bed or injured his ribs until June 23, 2017. In her declaration, she states that Plaintiff was not in acute distress when she observed him during the sick call visit on May 22, 2017. (Def's Decl., ¶ 21). She did not record in her progress notes that he told her he fell out of bed or that he complained of a rib injury. Defendant Cowden did note, however, that

---

[2] The factual background discussed herein for each of Plaintiff's claims is taken from Defendant Cowden's Concise Statement of Material Facts (ECF No. 122); Plaintiff's Responsive Statement to Material Facts (ECF No. 140); Defendant Cowden's Declaration (ECF No. 122-2); Plaintiff's Affidavit (ECF No. 141-8); and, the exhibits cited by the parties in those documents. Disputed facts are noted.

[3] Earlier in 2017, Plaintiff was charged on two occasions for separate drug-related misconducts. In the first instance, he pleaded guilty to the charge of possession or use of a dangerous or controlled substance. In the second instance, he pleaded "no contest" to that same charge. (ECF No. 122, ¶¶ 5-6; ECF No. 140, ¶¶ 5-6). On May 30, 2017, another drug-related misconduct was filed against him, and he was subsequently found guilty of possession or use of a dangerous or controlled substance. (ECF No. 122, ¶ 23; ECF No. 140, ¶ 23).

Plaintiff complained of neck and shoulder spasms which he stated stemmed from the pre-existing injury he sustained during a motor vehicle accident. (Def's Ex. A at 362-63; Def's Decl., ¶ 21). She does not dispute Plaintiff's contention that she suspected that he might be drug seeking. Her progress notes indicate that she had that concern. (*Id.*)

In response to the May 22, 2017 sick call visit, Defendant Cowden prescribed Plaintiff Robaxin[4], which is a muscle relaxant, 500 mg. twice a day. (*Id.* at 355, 362). Plaintiff was given the Robaxin from May 22, 2017 through May 26, 2017 as ordered by Defendant Cowden. (ECF No. 122, ¶¶ 14-15, 17; ECF No. 140, ¶¶ 14-15, 17).

On May 25, 2017, Defendant Cowden saw Plaintiff at his cell door after he filed a sick call request. She recorded in her progress notes that he was sitting on the floor and got up with ease, and that he complained of back pain. (Def's Ex. A at 362). On May 27, 2017, according to Defendant Cowden's orders, Plaintiff was provided with a 10-day supply of Motrin, 600 mg., to be taken orally three times a day with food. (ECF No. 122, ¶ 20; ECF No. 140, ¶ 20). Plaintiff also was provided with Flexeril, twice daily, which he took through May 30, 2017. (ECF No. 122, ¶ 22; ECF No. 140, ¶ 22).

On June 2, 2017, Defendant Cowden prescribed Plaintiff Mobic, a nonsteroidal anti-inflammatory medication. The 30-day supply of Mobic was to be administered to Plaintiff with instructions to take one tablet orally twice daily with food for pain. (ECF No. 122, ¶ 24; ECF No. 140, ¶ 24).

There is no dispute that Plaintiff was complaining of rib pain by June 19, 2017.

---

[4] When Plaintiff's prescriptions discussed herein were filled, he received the generic version of the medication at issue. For the sake of consistency and clarity, the Court refers only to the brand *Footnote continued on the next page...*

Defendant Cowden recorded in her progress notes for that day that he had placed a sick call request regarding that issue. She also wrote that he was "out to yard" during the sick call conducted on that date and that he could re-sign up. (ECF No. 122, ¶ 25; ECF No. 140, ¶ 25; Def's Ex. A at 361).

The next day, on June 20, 2017, Plaintiff was scheduled for X-rays. The "Release from Responsibility for Medical Treatment" form signed on that date indicates that the X-rays were to image his cervical and lumber spine, and that Plaintiff refused the procedure because "he state[d] the wrong X-rays were ordered" and that he needed X-rays of the left side of his ribs. (Def's Ex. A at 347). Defendant Cowden maintains she did not order the wrong X-rays. In support, she cites the response that Plaintiff received to Grievance #683299, in which he had accused her of negligence and deliberate indifference. It indicates that Defendant Cowden ordered the June 20, 2017 X-rays for Plaintiff's "complaints of neck and back pain dating back to May 2017." (*Id.* at 237). Plaintiff counters that there is nothing in either Defendant Cowden's progress notes or physician order indicating when or for what purpose the June 20, 2017 X-rays were ordered. (*Id.* at 354, 357-63).

On June 21, 2017, Plaintiff signed up for sick call complaining of pain in his side and ribs. He was not seen by Defendant Cowden that day. In her progress notes, she recorded that he was "out to yard" during sick call and the he could re-sign up. (ECF No. 122, ¶ 25; ECF No. 140, ¶ 25; Def's Ex. A at 361).

According to Defendant Cowden, it was not until her sick call visit with Plaintiff on June 23, 2017 that he first informed her that he fell out of bed and injured his ribs. (Def's Decl.,

---

name of the medication instead of the generic version that was ultimately administered.

6

¶ 26; Def's Ex. A at 263, 360-64). As set forth above, Plaintiff maintains he told her that information on May 22, 2017. (Pl's Aff., ¶ 8). In her declaration, and as reflected in her progress notes, Defendant Cowden explains that Plaintiff informed her during the June 23, 2017 sick call visit that it hurt to take deep breaths and to lay on his side, that he had no medication, and that he needed something for his pain. Defendant Cowden examined Plaintiff during this visit and determined that he was able to take deep breaths with no guarding and he had no issues breathing. She also determined that he was not guarding his left shoulder and did not appear to have any restricted range of motion. (Def's Decl., ¶ 26; Def's Ex. A at 360-61).

Defendant Cowden reviewed Plaintiff's medication records and noted that he was given Motrin on May 27, 2017 through June 2, 2017 and Mobic was ordered on June 2, 2017 through July 30, 2017. Since his 30-day supply of Mobic was dispensed on June 3, 2017, Defendant Cowden determined that Plaintiff should not be out of that medication if he had taken it properly. Therefore, Defendant Cowden discontinued the order of Mobic and prescribed in its place Tylenol, to be given under direct observation, until July 2, 2017. She directed that Plaintiff's prescription for Mobic would resume on July 3, 2017, and like the Tylenol, it was to be given under direct observation. (Def's Decl., ¶ 26; Def's Ex. A at 360-61).

On that same day, on June 23, 2017, Defendant Cowden ordered X-rays for Plaintiff's left ribs and left shoulder. She discontinued Plaintiff's current prescription for Mobic and prescribed him extra strength Tylenol, which was administered to Plaintiff from June 23, 2017 through July 2, 2017. (ECF No. 122, ¶¶ 28-29; ECF No. 140, ¶¶ 28-29).

On June 27, 2017, Plaintiff underwent X-rays of his left shoulder and left ribs. The X-rays of his left shoulder showed no fracture or dislocation. The X-rays of his left ribs showed

7

"fractures of the left posterior approximately eighth and ninth ribs displaced 2-3 mm that may not be acute." (Def's Ex. A at 349; ECF No. 122, ¶ 30; ECF No. 140, ¶ 30). In her declaration, Defendant Cowden avers that "[r]ib fractures are relatively common and can result from activity as simple as strenuous coughing or even minor traumatic injury. Most such non-displaced rib fractures like those indicated in [Plaintiff's] X-rays do not require any treatment *other than analgesia for pain* while ribs heal themselves." (Def's Decl., ¶ 28) (emphasis added).

Defendant Cowden reviewed Plaintiff's X-ray results on June 30, 2017 and visited with him at his cell that same day to explain them. She advised him to continue to avoid strenuous activities and that his ribs would take approximately six weeks to heal. During this same visit, Defendant Cowden noted that Plaintiff was able to take deep breaths, but said that it hurts, and that he had no respiratory issues. She advised Plaintiff that her plan was to continue to monitor him, repeat X-rays in four weeks, and that if further issues arose he should place a sick call request. (ECF No. 122, ¶ 31; ECF No. 140, ¶ 31).

On July 3, 2017, Plaintiff's prescription for Mobic resumed, but be refused the morning dose. (ECF No. 122, ¶ 32; ECF No. 140, ¶ 32). During the sick call visit that Defendant Cowden conducted later that day, Plaintiff continued to complain about rib pain. She recorded in her progress notes that she believed Plaintiff was medication seeking and that the plan was to continue to treat his pain with Mobic. (Def's Ex. A at 359). Plaintiff took his evening dose of Mobic on July 3, 2017 and thereafter it was administered through the morning dose of July 24, 2017, as prescribed by Defendant Cowden. (ECF No. 122, ¶¶ 32, 36; ECF No. 140, ¶¶ 32, 36).

On July 6, 2017, during another sick call visit, Plaintiff asked Defendant Cowden why his

pain medications had been discontinued. She explained to him why she had discontinued his Mobic prescription on June 23, 2017 and replaced it with Tylenol until he could resume taking Mobic again (which he did, beginning on July 3, 2017). Defendant Cowden recorded in her progress notes that Plaintiff informed her that he was improving slowly and that her plan was to continuing treating the pain from his rib fractures with Mobic. (ECF No. 122, ¶ 34; ECF No. 140, ¶ 34; Def's Ex. A at 359).

In a subsequent sick call visit on July 21, 2017, Plaintiff complained of ongoing rib pain and said that his medications were not helping. Defendant Cowden once again explained to Plaintiff that it would take time for his ribs to heal, and she told him that he was scheduled for a follow-up X-ray on July 26, 2017. She also informed him that she would change his medication from Mobic to Relafen, a nonsteroidal anti-inflammatory medication used to treat pain and arthritis. (ECF No. 122, ¶ 35; ECF No. 140, ¶ 35). Plaintiff took the Relafen prescribed by Defendant Cowden from July 23, 2017 through August 17, 2017. (ECF No. 122, ¶ 35; ECF No. 140, ¶ 35).

Plaintiff underwent follow-up X-rays of his left ribs on July 27, 2017. Those X-rays showed that his fractures were healing. (ECF No. 122, ¶ 38; ECF No. 140, ¶ 38). Thereafter, Defendant Cowden received no further complaint from Plaintiff regarding left side rib pain (Def's Decl., ¶ 34). On September 5, 2017, Plaintiff was seen by a doctor as SCI Fayette and complained that his rib fractures were painful. The doctor reordered Plaintiff a 30-day supply of Relafen and prescribed him a rib belt. (ECF No. 122, ¶¶ 40-41; ECF No. 140, ¶¶ 40-41).

9

### 2. Analysis

"The Eighth Amendment, through its prohibition on cruel and unusual punishment, prohibits the imposition of 'unnecessary and wanton infliction of pain contrary to contemporary standards of decency.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). In *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976), the Supreme Court held that this principle "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration[,]" and that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of a pain'...proscribed by the Eighth Amendment."

To establish his Eighth Amendment claim in this case, Plaintiff must prove two things. First, he must make an objective showing that his medical needs were serious. *See, e.g.*, *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

> A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.3d 326, 347 (3d Cir. 1987) (citation omitted). A medical need is also serious where the denial of treatment would result in the "unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 103, or a "life-long handicap or permanent loss," *Lanzaro*, 834 F.2d at 347.

*Atkinson v. Taylor*, 316 F.3d 257, 272 (3d Cir. 2003) (parallel citations omitted). Defendant Cowden does not argue that Plaintiff's fractured ribs were not a serious medical need. Therefore, it is uncontroverted that Plaintiff had a serious medical need.

Second, Plaintiff must make a subjective showing that Defendant Cowden was deliberately indifferent to his serious medical need. *See, e.g.*, *Rouse,* 182 F.3d at 197. The Supreme Court has described the state of mind deliberate indifference requires:

10

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement *unless the official knowns of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw that inference.*

*Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (emphasis added). "[D]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson,* 850 F.3d at 535.

Deliberate indifference has been found "in a variety of circumstances, including where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse,* 182 F.3d at 197. It has also been found "to exist where the prison official persists in a particular course of treatment in the face of resultant pain and risk of permanent injury." *Id.*

Importantly, the subjective inquiry that must be made in determining whether deliberate indifference exists is meant "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or misdiagnosis of an ailment." *Comstock v. McCrary,* 273 F.3d 693, 703 (6th Cir. 2001). Our Court of Appeals has explained:

> It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference." As the *Estelle* Court noted: "[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id.* at 105; *see also Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir. 1993) ("[T]he law is clear that simple medical malpractice is insufficient to present a constitutional violation."); *White v. Napoleon,* 897 F.2d 103, 110 (3d Cir. 1990) ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.") (emphasis omitted). "Deliberate indifference," therefore, requires "obduracy and

11

wantonness," *Whitley v. Albers*, 475 U.S. 312, 319 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (stating that "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm").

*Rouse*, 182 F.3d at 197 (parallel citations omitted); *see, e.g.*, *Spruill v. Gillis*, 372 F.3d 218, 235

(3d Cir. 2004) ("[a]llegations of medical malpractice are not sufficient to establish a

Constitutional violation."). Thus, "the mere receipt of inadequate medical care does not itself

amount to deliberate indifference–the defendant must also act with the requisite state of mind

when providing that inadequate care." *Pearson*, 850 F.3d at 535.

Moreover, when it comes to claims of deliberate indifference, there is a "critical

distinction" between allegations of a delay or denial of a recognized need for medical care and

allegations of inadequate medical treatment. *Id.* (citation omitted).

> Because "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation," *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d. Cir. 1987), when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

*Id.* That said, as the Court of Appeals has made clear, the fact that prison medical personnel have

provided some medical care to an inmate does not preclude a finding of deliberate indifference:

> [T]here are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for "an easier and less efficacious treatment" of the inmate's condition. *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Nor may "prison authorities deny reasonable requests for medical treatment...[when] such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth County Corr. Inst. Inmates*, 834 F.2d at 346 (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). And, "knowledge of the need for medical care [may not be accompanied by

12

the]…intentional refusal to provide that care." *Id.* (alterations in original) (quoting *Ancata v. Prison Health Servs.*, 796 F.2d 700, 204 (11th Cir. 1985)).

*Palakovic v. Wetzel*, 854 F.3d 209, 228 (3d Cir. 2017).

In her Motion, Defendant Cowden's primary argument is that she is entitled to summary judgment because Plaintiff failed to adduce sufficient evidence that would allow a reasonable factfinder to conclude that he fell out of bed on May 19, 2017 and reported the fall and his rib injury to her during the May 22, 2017 sick call visit. In support, she directs the Court to evidence in the summary judgment record, including her declaration, progress notes, as well as statements Plaintiff made in a grievance on another matter, that supports her position that: (1) if Plaintiff did in fact fall out of bed and injure his ribs, that event did not occur until around June 19, 2017; and, (2) Plaintiff did not tell her that he fell out of his bed and injured his ribs until the sick call visit conducted on June 23, 2017. (Def's Decl., ¶ 26; Def's Ex. A at 263, 360-63).

In opposition to Defendant Cowden's Motion, Plaintiff avers in his affidavit that he fell out of his bed on May 19, 2017 and informed Defendant Cowden on May 22, 2017 how and where he was injured. (Pl's Aff., ¶¶ 5-10). Viewing the facts in the light most favorable to the Plaintiff, as the Court must do, there is a genuine dispute of material fact regarding the date Plaintiff first informed Defendant Cowden of his fall and rib injury. The fact that this is not recorded in Defendant Cowden's May 22, 2017 progress note does not conclusively prove for the purposes of summary judgment that Plaintiff did not tell her on that date how and where he injured himself. A reasonable factfinder could conclude that Defendant Cowden simply did not record certain statements he made to her on that date. Because the Court cannot resolve the credibility dispute between the parties' respective versions of events, Defendant Cowden is not entitled to summary judgment on the ground that Plaintiff did not injure his ribs until on or

13

around June 19, 2017 and/or did not initially report that injury to her until June 23, 2017.

Defendant Cowden alternatively argues that, even if the summary judgment record supports Plaintiff's allegation that he fell from his bed on May 19, 2017, his Eighth Amendment claim still fails because, at most, she was negligent. In support, she relies upon the Court of Appeals' decision in *Brown v. Borough of Chambersburg*, 903 F.2d 274 (3d Cir. 1990).[5] In that case, when the plaintiff complained to the prison doctor of pain in his ribs, the doctor conducted an examination (albeit only a visual one) of his upper chest and concluded that the plaintiff only had a bruise. *Id.* at 278. Subsequent medical treatment at a hospital established that plaintiff in fact had two broken ribs. *Id.* The Court of Appeals concluded that, even accepting Plaintiff's testimony that the doctor did only a cursory visual examination of him, "[t]he most that can be said of plaintiff's claim is that it asserts the doctor's exercise of deficient professional judgment." *Id.*

*Brown* is distinguishable here because the doctor in that case conducted an examination of the plaintiff before he misdiagnosed him. As the Court of Appeals explained in that case, "[w]hile the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate the prisoner's constitutional rights." *Id.*

Under Plaintiff's version of events, Defendant Cowden did not examine him because she thought he was malingering and drug seeking, and Plaintiff has cited case law to support his

---

[5] Defendant Cowden also cites an unpublished district court decision, *Fernandez v. Reihart*, 2013 WL 1465505, *11 (M.D. Pa. 2013), which cited *Brown* for the general proposition that a failure of prison physician to detect two broken ribs was at most "an exercise of deficient professional judgment").

contention that her belief did not excuse her action of denying him medical care. *Foelker v. Outagamie County*, 394 F.3d 510, 513-14 (7th Cir. 2005) (holding a reasonable jury could conclude that a nurse, who may have honestly believed that an inmate was "playing the system," was deliberately indifferent to his serious medical needs when the nurse observed him exhibiting signs of drug withdrawal); *Walker v. Benjamin*, 293 F.3d 1030, 1039-40 (7th Cir. 2002) (claims that doctor and nurse withheld prescribed pain medication because they thought the prisoner was malingering and trying to get high presented a jury question of deliberate indifference); *see also Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (absence of "objective" evidence of pain and suffering did not excuse refusal to treat it, since "self-reporting is often the only indicator a doctor has of a patient's condition.").

Defendant Cowden also argues that she is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim because he was prescribed pain medication to address his back pain. "Given that [Plaintiff] was prescribed pain medication for the complaints he was making [for his back pain] anyway," she argues, "and no *other* treatment was indicated for his rib fractures regardless of when the occurred, he received treatment all the same." (ECF No. 121 at 14) (emphasis in Defendant Cowden's brief). This argument is Defendant Cowden's strongest one. After all, even when a plaintiff has been delayed treatment altogether, he must have suffered harm as a result of the delay in order to prevail on an Eighth Amendment claim. *See, e.g., Brooks v. Kyler*, 204 F.3d 102, 105 n.4 (3d Cir. 2000). The shortcoming in Defendant Cowden's argument in this regard, however, is that Plaintiff was not administered Motrin until May 27, 2017–eight days after he avers he fell out of his bed and injured his ribs, and five days after he reported to her that he was suffering severe pain from his rib injury. Thus, there was a

span of several days during which he was receiving no pain treatment whatsoever. A reasonable factfinder could conclude that Defendant Cowden was deliberately indifferent to his serious medical needs during that period of time when he was receiving no pain medication (although not for the approximately 39 days that Plaintiff alleged in the Amended Complaint). Additionally, when Defendant Cowden initially treated Plaintiff for his rib pain, she did not prescribe him Motrin. Rather, she treated him with Mobic and Tylenol. Without some explanation from Defendant Cowden regarding the medications at issue, the Court cannot conclusively determine that, had Defendant Cowden examined Plaintiff when he maintains he first reported his rib injury to her, she would have prescribed the same treatment for his back pain.

In conclusion, Defendant Cowden has not demonstrated that there are no genuine issues of material fact with respect to Plaintiff's Eighth Amendment claim that he was denied and/or delayed medical care for his fractured ribs. Therefore, she is not entitled to summary judgment on that claim.

### B. Plaintiff's Fourteenth Amendment Claim

#### 1. Relevant Facts

When conducting sick call visits with inmates housed in the RHU, Defendant Cowden initially sees the inmates at their cell door. (ECF No. 122, ¶ 49; ECF No. 140, ¶ 49). If there is an acute need at the time, it is possible for her to request security to take the inmate out of their cell and meet with them with at least some degree of privacy. (ECF No. 122, ¶ 50; ECF No. 140, ¶ 50). Defendant Cowden states that this cannot be done as a matter of course because it would disrupt the security of the RHU. (Def's Decl., ¶ 7). Plaintiff counters that RHU inmates are taken

to the triage room more frequently than Defendant Cowden implies, particularly when the inmate must see a psychiatrist or psychologist. (Pl's Aff., ¶ 38).

According to Defendant Cowden, if, after the initial cell door consultation, she believes it is necessary to further evaluate an inmate, she will place the inmate on her line to be brought out of their cell and further evaluated in the triage room.[6] (Def's Decl., ¶ 8). In the RHU, however, the ultimate decision to remove an inmate from his cell for non-emergent medical care lies with the correctional officers and is determined based upon security concerns. Therefore, even if Defendant Cowden places an inmate on her line to be seen in the RHU triage, her request can be denied by security. (ECF No. 122, ¶¶ 51-54; ECF No. 140, ¶¶ 52-53).

Defendant Cowden maintains that she routinely exercises great care and caution whenever interacting with an inmate at his cell door during an RHU sick call visit, and that there are multiple ways to carry on a meaningful medical provider-patient interaction during such visits. (Def's Decl., ¶ 11). For example, she explains that since inmates include a summary of their medical concerns/complaints on their sick call request forms, she is aware of the inmate's issue prior to conducting the sick call visit. This allows her to be discreet when initiating the visit. It also allows an inmate to simply refer to his sick call requests if he does not feel comfortable describing his medical concerns. (*Id.*, ¶ 12). Defendant Cowden also maintains that she routinely speaks in coded language and in a low voice in an effort to be discreet. While inmates themselves are not always so discreet, she explains, she is careful not to reveal sensitive information. (*Id.*, ¶ 14). Defendant Cowden further states that an inmate can also choose to write

---

[6] At least two correctional officers are present in the triage room, so there is not total privacy between the inmate and the medical provider in the triage room either. (Def's Decl., ¶ 10; ECF *Footnote continued on the next page…*

down questions and pass a notepad back and forth, or hold it up for her to read, thereby conducting the whole interview in writing. In the alternative, Defendant Cowden explains, the inmate can ask her to come back later if he feels that someone is trying to listen or they don't feel comfortable talking at that time. (*Id.*, ¶ 13).

Plaintiff states generally that Defendant Cowden does not use discretion when conducting her sick call visits, does not use "coded language" or have notebook with her. (Pl's Aff., ¶ 34). He also states that there is no way for her to pass a notepad back and forth through the RHU cell door. (*Id.*, ¶ 35).

On May 11, 2017, Defendant Cowden conducted a sick call visit regarding Plaintiff's STD. (Def's Ex. A at 364). She was aware prior to this visit that he was suffering from an outbreak of genital warts and was seeking treatment for the same based upon his sick call request. In the progress notes, she recorded that Plaintiff had HPV/genital warts; that he has had that condition "for a while;" that she was considering treating him with certain medication three times a week; and, that she would put him on the nurse line so he could self-apply that medication. (Def's Decl., ¶ 15; Def's Ex. A at 364). The same day, Defendant Cowden placed an order putting Plaintiff on the RHU line for May 19, 2017 to check his warts. (ECF No. 122, ¶ 9; ECF No. 140, ¶ 9).

Defendant Cowden states that because Plaintiff was not seeking treatment for a new diagnosis, she and Plaintiff were able to conduct the May 11, 2017 sick call visit at the cell door in a discreet manner and without having to go into great detail regarding his symptoms or possible treatment. She further states that she did not speak any words at the cell door which

No. 122, ¶ 53; ECF No. 140, ¶ 53).

18

would have revealed the nature of his complaints which someone else could overhear. (Def's Decl., ¶ 15).

Plaintiff, in contrast, maintains that he did not have a history of a STD and that he in fact was being seen for a "new" condition. (Pl's Aff., ¶ 27). In support, he cites to a form listing his chronic medical conditions. It lists that he was first diagnosed with genital warts on May 16, 2017. (Pl's Ex. F at 174). Plaintiff states that he requested that his May 11, 2017 sick call visit be conducted in the triage room, but that Defendant Cowden refused his request. According to Plaintiff, Defendant Cowden then discussed his STD ailment in the presence of his cellmate, other inmates and staff. (Pl's Aff., ¶ 28).

On May 16, 2017, Defendant Cowden saw Plaintiff at his cell door in response to another sick call request regarding his genital warts. (ECF No. 122, ¶ 10; ECF No. 140, ¶ 10). Plaintiff states that he requested that this visit be conducted in the triage room, that Defendant Cowden refused his request, and that she told him that if he wanted treatment "this was going to be the way it was done." (Pl's Aff., ¶ 29). Therefore, Plaintiff maintains that he was forced to disclose his STD ailments in the presence of inmates and staff. (*Id.*, ¶ 30). Defendant Cowden informed Plaintiff during this visit that he was scheduled to be examined in the triage room on May 19, 2017 and that she would order him a topical gel used to treat external genital warts.[7] (ECF No. 122, ¶ 10; ECF No. 140, ¶ 10).

During a sick call visit conducted on May 25, 2017, Plaintiff complained of penis irritation from using the topical gel that Defendant Cowden had prescribed. She advised him to

---

[7] Plaintiff's scheduled examination for May 19, 2017 in the triage room was canceled "due to security issues" in the RHU. (ECF No. 122, ¶ 13; ECF No. 140, ¶ 13).

stop using it temporarily. (Def's Decl., ¶ 22; Def's Ex. A at 262). Plaintiff states that during this visit he had to disclose in the presence of his cellmate, other inmates, and staff the side effects he was experiencing, which consisted of burned and peeling skin, open sores, and severe genital pain. (Pl's Aff., ¶ 32; Def's Ex. A at 362).[8]

Plaintiff states that because Defendant Cowden refused his requests that his sick call visits related to his STD be conducted in the RHU triage room, information regarding that ailment and the treatment he received for it was disclosed to other inmates and staff and that, as a result, he was harassed, humiliated and made fun of by inmates and staff. (Pl's Aff., ¶ 33). He also produced the declaration of Barry Hopkins (ECF No. 141-4 at 2-3), an inmate who was housed in a cell near Plaintiff's cell during May and June 2017. Mr. Hopkins states that "[o]n several occasions as a result of Ms. Cowden disclosing [Plaintiff's] medical [information] both staff and [inmates] began to redicule [sic] him, etc." (*Id.* at 3).

### 2. Analysis

In *Doe v. Delie*, 257 F.3d 309, 315-18 (3d Cir. 2001), the Court of Appeals recognized that the Fourteenth Amendment affords a prisoner the right to privacy in his medical information.[9] It also held that "a prisoner does not enjoy a right of privacy in his medical information to the same extent as a free citizen[,]" and that his "constitutional right is subject to substantial restrictions and limitations in order for correctional officials to achieve legitimate correctional goals and maintain institutional security." *Delie*, 257 F.3d at 317. Thus, the Court of

---

[8] This appears to be the incident Plaintiff referenced at paragraph 35 of his Amended Complaint.
[9] In *Delie*, the inmate challenged certain prison procedures that resulted in the repeated disclosure of his HIV-positive status. Defendant Cowden does not argue that Plaintiff's STD ailment is the type of condition that fails to meet a certain threshold of sensitivity and seriousness *Footnote continued on the next page…*

20

Appeals held, a prisoner's right to privacy in his medical information "may be curtailed by" a policy that is "reasonably related to a legitimate penological interests." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

Defendant Cowden maintains that she is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim because she followed SCI Fayette's policy for RHU sick call visits, exercised great care when she conducted those visits with Plaintiff, and did not intentionally disclose any of his medical information relating to his STD. As the foregoing discussion of the facts relevant to this claim demonstrate, however, there are genuine issues of material fact that preclude summary judgment for Defendant Cowden on Plaintiff's Fourteenth Amendment claim.

For example, there is a genuine issue of material fact with respect to whether Plaintiff's STD was a "new" condition and, thus, to what extent Defendant Cowden and Plaintiff were able to avoid discussing it during the May 11, 2017 sick call visit. Plaintiff has also adduced sufficient evidence from which a reasonable factfinder could conclude that Defendant Cowden did not actually utilize the methods available to her under the RHU sick call policy to protect his right to privacy and that, as a result, information about his STD was revealed to other inmates and staff during each of the sick call visits at issue.

Finally, Defendant Cowden argues that she made an effort to see Plaintiff outside of his cell to offer at least some greater degree of privacy, but that her request was denied by correctional officers based upon security reasons. The evidence in the summary judgment record demonstrates that she only made one such request, for May 19, 2017. That request was denied

---

to implicate his right to privacy.

21

due to security reasons. However, Plaintiff avers that on May 11, 2017 and May 16, 2017, he expressly requested that he be brought to the RHU triage room so that he could discuss his STD in more privacy, and that Defendant Cowden—not a correctional officer—denied his request. Defendant Cowden does not dispute Plaintiff's account in this regard.

In conclusion, Defendant Cowden has not demonstrated that there are no genuine issues of material fact with respect to Plaintiff's claim that she violated his Fourteenth Amendment right to privacy. Therefore, she is not entitled to summary judgment on that claim.

## IV. Conclusion

For the reasons set forth herein, the Motion for Summary Judgment of Defendant Darla Cowden (ECF No. 120) is denied. An appropriate Order follows.

By the Court:

PATRICIA L. DODGE
United States Magistrate Judge

Dated: December 31, 2019