IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY SIDES,<br><br>    Plaintiff,<br><br>v.<br><br>PENNSYLVANIA DEPT. OF CORR.,<br>*et al.*,<br><br>    Defendants. | )<br>)<br>)  Civil Action No. 2:18-cv-145<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

For the reasons that follow, the motion for summary judgment filed by the Pennsylvania Department of Corrections ("DOC") and the individual DOC defendants (ECF No. 132) is granted in part and denied in part. Plaintiff's motion requesting a hearing on exhaustion (ECF No. 166) is denied.

## I.    Introduction

Plaintiff, Anthony Sides, is a state prisoner in the custody of the DOC. He is proceeding *pro se* in this civil action, which he brings under 42 U.S.C. § 1983. Plaintiff is housed at SCI Pine Grove. When he commenced this action, he was housed at SCI Fayette, and the events at issue in this lawsuit occurred there between May 2017 to around July 2017, during which time he was designated to its Restricted Housing Unit ("RHU").

The operative complaint is the Amended Complaint (ECF No. 31), which Plaintiff filed on June 20, 2018. He named as defendants Darla Cowden, who is a contract Physician Assistant at SCI Fayette; the DOC and its Secretary, John Wetzel; Mark Copazzo, the Superintendent of SCI Fayette; Captain Tift, John Doe 1 and John Doe 2, each of whom worked in SCI Fayette's RHU during the events in question; and Nedra Grego, the Chief Health Care Administrator

("CHCA") for SCI Fayette. All defendants except Cowden are collectively referred to as the "DOC Defendants."

Plaintiff brings Eighth and Fourteenth Amendment claims against one or more of the defendants. He seeks an award of punitive, compensatory, and nominal damages, as well as injunctive and declaratory relief.

Plaintiff's Eighth Amendment claims stem from his allegation that when he fell from his bed on May 19, 2017, he fractured his ribs and exacerbated a pre-existing injury to his back. (ECF No. 31, ¶¶ 10, 12). He claims Cowden was deliberately indifferent to his serious medical needs because after he reported his rib injury to her on May 22, 2017, she denied and/or delayed him medical care for that injury until X-rays taken in late June 2017 (approximately 39 days after he injured himself) confirmed that his ribs were fractured. (*Id.*, ¶¶ 13-25, 37, 42). Plaintiff accuses Grego of deliberate indifference because she did not assist him after he advised her on several occasions that Cowden was denying and/or delaying him medical treatment. (*Id.*, ¶¶ 16, 39, 42). He accuses Cpt. Tift, John Doe 1 and John Doe 2 of deliberate indifference because they were "too busy" to give the order necessary to permit him to be escorted to the triage room to be examined for his injury. (*Id.*, ¶¶ 21, 38, 42).

Plaintiff's Fourteenth Amendment claim stems from his allegation that Cowden violated the right to privacy because information about his sexually transmitted disease ("STD"), and his treatment related to it, were disclosed to other inmates and staff during some of the sick call visits she conducted at his cell door in May 2017. (*Id.*, ¶¶ 26-36). He faults her for not speaking with him about his STD in the RHU triage room in order to afford him with more privacy. (*Id.*) Regarding Wetzel and Copazzo, Plaintiff alleges that they failed to correct the actions of one or

more of the other defendants and allowed them "to continuously violate DOC policy and Procedures" by employing the "blanket policy" of "conducting cursory examinations" at an RHU inmate's cell door instead of using the available triage room. (*Id.* at p. 5, and ¶ 41).

After discovery in this case concluded, Cowden and the DOC Defendants filed their respective motions for summary judgment.[1] The Court previously denied Cowden's motion, concluding that there are genuine issues of material fact which preclude summary judgment with respect to the Eighth and Fourteenth Amendment claims Plaintiff brings against her. (ECF No. 180). The Court now turns to the DOC Defendants' motion. (ECF No. 132). In support of their motion, they filed a brief (ECF No. 133), an appendix (ECF No. 134), and a concise statement of material facts (ECF No. 148). Plaintiff filed a brief in opposition to the DOC Defendants' motion (ECF No. 153) and supporting documents (ECF No. 154).

## II. Relevant Factual Background[2]

Plaintiff was confined at SCI Fayette from December 2016 through April 2018. He was housed on its RHU from January 19, 2017 through September 2017. (Pl's Aff. 2, ¶¶ 1-2).

---

[1]  After the DOC Defendants filed their pending motion, Plaintiff identified Lt. Rohal and Sgt. Wiles and substituted them in place of the John Does. The Court ordered that if Lt. Rohal and Sgt. Wiles intended to move for summary judgment or join in the pending motion for summary judgment filed by the other DOC Defendants, they had to so notify the Court. (ECF Nos. 175, 183). Lt. Rohal and Sgt. Wiles subsequently filed a notice that they were joining in the pending DOC Defendants' motion. (ECF No. 184).

[2]  The factual background discussed herein is only that which is relevant to the disposition of the arguments raised in the DOC Defendants' motion. It is taken from the DOC Defendants' concise statement of materials facts (ECF No. 148) and Plaintiff's response (ECF No. 154), as well as the exhibits cited in those documents, including Plaintiff's affidavit (ECF No. 153-3, "Pl's Aff. 1"); Cowden's concise statement of material facts (ECF No. 122), Plaintiff's response (ECF No. 140), and the exhibits cited in those documents, including Cowden's declaration (ECF No. 122-2) and a second affidavit submitted by Plaintiff (ECF No. 141-8, "Pl's Aff. 2"). Disputed facts are noted where relevant.

A.   Eighth Amendment Claims

Plaintiff avers that when he fell from his bed on Friday, May 19, 2017, he fractured his ribs and exacerbated a pre-existing injury from a 2008 motor vehicle accident. (Pl's Aff. 2, ¶ 5). He states that his cellmate notified a corrections officer that Plaintiff needed help. The officer did not provide any assistance and instructed that Plaintiff should sign up for sick call. (*Id.*, ¶ 6). According to Plaintiff, he had to wait approximately 48 hours to receive a sick call visit because SCI Fayette's RHU does not conduct them on Saturdays or Sundays. (*Id.*, ¶¶ 7-8).

Plaintiff states that he informed Cowden about his fall and the injury to his ribs during a sick call visit she conducted at his cell door on Monday, May 22, 2017. (*Id.*, ¶ 8). According to Plaintiff, Cowden did not visually or physically examine him and accused him of malingering and trying to get medication to get high. He told her that that was not the case and that he was in severe pain. (*Id.*, ¶¶ 8-10).

Cowden disputes Plaintiff's version of events. In her declaration, she states that Plaintiff was not in acute distress when she observed him during the sick call visit on May 22, 2017. (Cowden Decl., ¶ 21). She maintains that the first time Plaintiff told her he fell out of his bed and injured his ribs was during a sick call visit she conducted one month later, on June 23, 2017. (*Id.*, ¶ 26). Additionally, in support of her motion for summary judgment, she directed the Court to evidence that supports her position that if Plaintiff did in fact fall out of bed and injure his ribs, that event likely did not occur until around June 19, 2017. (*Id.*, ¶¶ 25-26; ECF No. 122-1 at 2, 34-37).

As the Court explained in its memorandum opinion denying Cowden's motion for summary judgment, on May 22, 2017 Cowden prescribed Plaintiff a muscle relaxant to address

neck and shoulder spasms which he stated stemmed from the pre-existing injury he sustained during a motor vehicle accident. Over the course of the next several weeks, she also prescribed additional medications for him after he complained of back pain, some of which were the same medications she would prescribe to him once she began treating him for his rib injury. However, Cowden did not examine or begin specifically treating Plaintiff for his rib injury until June 23, 2017, which is the day she maintains he first reported that injury to her. (ECF No. 180 at 4-7).

Plaintiff avers that on several occasions he wrote to Grego and advised her of Cowden's alleged deliberate indifference to his serious medical needs. (Pl's Aff. 1, ¶ 4; Pl's Aff. 2, ¶ 12). The DOC's health care policies define the role of the CHCA as "[t]he facility staff member responsible for overseeing the delivery of medical/mental health services via the medical vendors and Department staff." (ECF No. 153-2 at 2).

In a Request to Staff Plaintiff submitted to Grego dated July 19, 2017, he wrote that it was the third time he had written to her asking for her assistance to see a physician instead of Cowden. (ECF No. 141-2 at 2). He further wrote that his ribs were broken, that he was in pain, and that the medication Cowden prescribed was not working. Grego responded: "You are not to circumvent the sick call system by requesting a specific provider. Please address this in sick call." (*Id.*)

The Court denied Cowden's motion for summary judgment on the Eighth Amendment claim Plaintiff brings against her because viewing the facts in the light most favorable to Plaintiff, there is a genuine dispute of material fact regarding the date Plaintiff first informed her of his fall and rib injury. (ECF No. 180 at 13). Additionally, the Court concluded that under

Plaintiff's version of events, a reasonable jury could conclude that Cowden was deliberately indifferent to his serious medical needs during that period of time when he was receiving no pain medication (although not for the approximately 39 days that Plaintiff alleged in the Amended Complaint). (*Id.* at 14-16).

B.     Fourteenth Amendment Claim

When conducting sick call visits with inmates housed in SCI Fayette's RHU, Cowden initially sees the inmates at their cell door. (ECF No. 122, ¶ 49; ECF No. 140, ¶ 49). She explains in her declaration that if she determines that there is an acute need at the time, she can request security to take an inmate out of his cell and meet with him with at least some degree of privacy, but this cannot be done as a matter of course because it would disrupt the security of the unit. (Cowden's Decl., ¶ 7). Plaintiff counters that inmates housed on SCI Fayette RHU were taken to the triage room more frequently than Cowden implies, particularly when they were to see a psychiatrist or psychologist. (Pl's Aff. 2, ¶ 38). He also avers that "[i]t is widely known that inmates are not removed from [their] cells because it's a 'hassle' and lack of staff." (*Id.*, ¶ 36).

Cowden explains that, if, after the initial cell door consultation, she believes it is necessary to further evaluate an inmate, she will place the inmate on her line to be brought out of their cell and further evaluated in the triage room. (Cowden's Decl., ¶ 8). The ultimate decision to remove an inmate from his cell for non-emergent medical care lies with the correctional officers and is determined based upon security concerns; therefore, her request can be denied by security. (*Id.*, ¶ 9; ECF No. 122, ¶¶ 51-54; ECF No. 140, ¶¶ 52-53).

Cowden maintains that she routinely exercises great care and caution whenever interacting with an inmate at his cell door during an RHU sick call visit, and that there are

multiple ways to carry on a meaningful medical provider-patient interaction during such visits. (*Id.*, ¶ 11). Since inmates include a summary of their medical concerns/complaints on their sick call request forms, she is aware of the inmate's issue prior to conducting the sick call visit. This allows her to be discreet when initiating the visit. It also allows an inmate to simply refer to his sick call requests if he does not feel comfortable describing his medical concerns. (*Id.*, ¶ 12). Additionally, Cowden maintains that she routinely speaks in coded language and in a low voice. (*Id.*, ¶ 14). An inmate can also choose to write down questions and pass a notepad back and forth, or hold it up for her to read, thereby conducting the whole interview in writing. In the alternative, Cowden explains, the inmate can ask her to come back later if he feels that someone is trying to listen to their conversation or he doesn't feel comfortable talking at that time. (*Id.*, ¶ 13).

In turn, Plaintiff counters that Cowden did not use discretion when she conducted her sick call visits with him at his RHU cell door, did not use "coded language" or have notebook with her. (Pl's Aff. 2, ¶ 34). He states that there was no way for her to pass a notepad back and forth through the RHU cell door. (*Id.*, ¶ 35). Additionally, according to Plaintiff, the cells in SCI Fayette's RHU unit "are so close in proximity that it's impossible not to know what is going on at any given time." (*Id.*, ¶ 4).

On several occasions in May 2017, Cowden conducted sick call visits at Plaintiff's RHU cell door that pertained to his STD. The first of these visits was conducted on May 11, 2017. Plaintiff states that he requested that Cowden conduct the sick call visit in the RHU triage room "per DOC policy" but that she refused his request. (Pl's Aff. 2, ¶¶ 25, 28). According to Plaintiff, Cowden then discussed his STD ailment in the presence of his cellmate, other inmates, and staff.

(*Id.*)

Plaintiff maintains that similar events transpired during sick call visits Cowden conducted on May 16, 2017 and on May 25, 2017. (*Id.*, ¶¶ 29-32). As a result of these incidents, Plaintiff states, he was harassed, humiliated and made fun of by inmates and staff. (*Id.*, ¶ 33; *see also* Decl. of Barry Hopkins, ECF No. 141-4 at 2-3). Cowden disputes Plaintiff's account. She states that she did not speak any words at Plaintiff's cell door which would have revealed the nature of his complaints which someone else could overhear. (Cowden's Decl., ¶¶ 15, 21).

On May 11, 2017, Defendant Cowden placed an order putting Plaintiff on the RHU line for May 19, 2017 so that she could check his warts. (Cowden's Decl., ¶ 20; ECF No. 122, ¶ 9; ECF No. 140, ¶ 9). Plaintiff was not brought to the triage room on that date, however. In her progress note for May 19, 2017, Defendant Cowden recorded that this was "due to security issues on B Pod, security will not bring out inmates to triage." (ECF No. 122, ¶ 13; ECF No. 140, ¶ 13).

In her motion for summary judgment, Cowden maintained that she followed SCI Fayette's policy for RHU sick call visits, exercised great care when she conducted those visits with Plaintiff, and did not intentionally disclose any of his medical information relating to his STD. In denying her motion, the Court concluded that there are genuine issues of material fact that preclude summary judgment in her favor. (ECF No. 180 at 21). For example, the Court explained, there is a genuine issue of material fact with respect to whether Plaintiff's STD was a "new" condition and, thus, to what extent Cowden and Plaintiff were able to avoid discussing it during the May 11, 2017 sick call visit. The Court further held that Plaintiff adduced sufficient evidence from which a reasonable factfinder could conclude that Cowden did not actually utilize

8

the methods available to her under the RHU sick call policy to protect his right to privacy and that, as a result, information about his STD was revealed to other inmates and staff during each of the sick call visits at issue. (*Id.*) In response to Cowden's argument that she made an effort to see Plaintiff outside of his cell to offer at least some greater degree of privacy, but that her request was denied by correctional officers based upon security reasons, the Court noted that the evidence in the summary judgment record demonstrates that she only made one such request, for May 19, 2017. That request was denied due to security reasons. However, Plaintiff avers that on May 11, 2017 and May 16, 2017, he expressly requested that he be brought to the RHU triage room so that he could discuss his STD in more privacy, and that Defendant Cowden—not a correctional officer—denied his request. (*Id.*)

C.     Plaintiff's Grievances

Plaintiff filed three grievances relevant to this civil action. Grievance 679071 is dated as having been received by the facility grievance coordinator on May 24, 2017. (ECF No. 134-1 at 29-30; ECF No. 148, ¶ 7; ECF No. 154, ¶ 7). In it, Plaintiff complained that Cowden violated his right to privacy because she discussed his STD at his cell door during sick call visits she conducted on three occasions that month. (*Id.* at 29). He wrote that because the RHU had a triage room, there was "no reason why she should discuss [his] medical condition in the presence of" other inmates. Plaintiff stated that he was seeking an injunction requiring that all RHU sick call visits be conducted the triage room. (*Id.*) In this same grievance, Plaintiff also complained about events related to Cowden's May 22, 2017 sick call visit. He asserted that she failed to examine or treat him for the back pain he was experiencing relating to a pre-existing injury. (*Id.* at 30). Significantly, Plaintiff did not complain that a correctional officer failed to properly respond to a

call-button request for assistance on May 19, 2017. (*Id.* at 30). He does not reference any correctional officers or allege that any officer engaged in wrongdoing. (*Id.*) The only defendant he identified is Cowden and his grievance expressly states that it is against Cowden. (*Id.* at 29-30).

Grievance 683299 is dated as received by the facility grievance coordinator on June 22, 2017. (*Id.* at 22). In it, Plaintiff wrote that he was complaining about Cowden's deliberate indifference in treating his rib pain. (*Id.*) The only defendant he identified is Cowden. (*Id.*) In his appeal only, he states that correctional officers who were unknown to him refused to have him "pulled out" of his cell to be physically examined. (*Id.*) While his grievance indicates that he spoke to "Sgt. Miles" about his complaints against Cowden, he does not assert any claim against him. (*Id.*)[3]

Grievance 689031 is dated as received by the facility grievance coordinator on July 31, 2017. In it, Plaintiff complains that Cowden was not providing him with proper treatment for his rib injury. (*Id.* at 9-10). He also contended that Grego failed to assist him after he complained to her about Cowden's deliberate indifference to his medical needs. (*Id.* at 10). No other defendants are mentioned. (*Id.*)

## III.    Summary Judgment Standard

The Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may

---

[3] For purposes of resolving the motion for summary judgment and viewing the facts in the light most favorable to Plaintiff as the non-moving party, the Court will infer that Plaintiff's reference
*Footnote continued on the next page…*

be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In following this directive, a court must take the facts in the light most favorable to the non-moving party and must draw all reasonable inferences and resolve all doubts in that party's favor. *Hugh v. Butler County Family YMCA*, 418 F.3d 265,266 (3d Cir. 2005); *Doe v. County of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

Although courts must hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), at the summary judgment stage a *pro se* plaintiff is not exempt from his burden of providing some affirmative evidence, not just mere allegations, to show that there is a genuine dispute for trial. *See, e.g., Barnett v. NJ Transit Corp.*, 573 F. App'x 239, 243 (3d Cir. 2014) (holding that the *pro se* plaintiff was still "required to designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories…sufficient to convince a reasonable fact finder to find all the elements of her prima facie case") (citation and quotation omitted); *Siluk v. Beard*, 395 F.

---

to Sgt. Miles may actually refer to Defendant Sgt. Wiles.

App'x 817, 820 (3d Cir. 2010) ("[T]he right of self-representation does not exempt a party from compliance with relevant rules of procedural law.").

## IV. Discussion

### A. Exhaustion and Procedural Default

The Prison Litigation Reform Act ("PLRA") provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Supreme Court has repeatedly observed that the PLRA's exhaustion requirement "is 'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) and *Jones v. Bock*, 549 U.S. 199, 211 (2007)). The PLRA's mandatory exhaustion requirement means not only that a complaint filed before administrative remedies are exhausted is premature and cannot be entertained, it also means that failure to exhaust administrative remedies in accordance with a prison's grievance procedures constitutes procedural default. *Woodford*, 548 U.S. at 93-95; *see also Spruill v. Gillis*, 372 F.3d 218, 227-30 (3d Cir. 2004). That is because "the PLRA's exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93; *Spruill*, 372 F.3d at 227-30.

The prison's grievance policy is what "define[s] the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218; *Spruill*, 372 F.3d at 230-31 (the "prison grievance procedures supply the yardstick for measuring procedural default."). Therefore, in this case "[t]he level of detail necessary in a grievance to comply with the grievance procedures[,]" *id.* at 218, is established by

the DOC's grievance policy, which is set forth in DC-ADM 804.[4] It requires at § 1.A.11:

> The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim.
>
> a.  The statement of facts shall include the date, approximate time, and location of the event(s) that gave rise to the grievance.
>
> b.  The inmate shall identify individuals directly involved in the event(s).
>
> c.  The inmate shall specifically state any claims he/she wishes to make concerning violations of Department directives, regulations, court orders, or other law.
>
> d.  If the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance.

Additionally, DC-ADM 804 also provides at § 1.A.13 that "[a]n inmate who has been personally affected by a Department and/or facility action or policy will be permitted to submit a grievance."

Importantly, "[e]xhaustion is considered separately for each claim brought by an inmate, and if a complaint includes both exhausted and unexhausted claims, courts will dismiss the latter but not the former." *Shifflett v. Korszniak*, 934 F.3d 356, 364-65 (3d Cir. 2019) (citing *Jones*, 549 U.S. at 219-20). "Failure to exhaust administrative remedies is an affirmative defense that must be pled and proven by the defendant[s]." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002)).

The Court of Appeals has explained that if the defendant demonstrates the inmate failed to exhaust his administrative remedies, then "the inmate plaintiff bears the onus of producing

---

[4]The policy is posted on the DOC website and is accessible at: https://www.cor.pa.gov/About%20Us/Pages/DOC-Policies.aspx. (*See also* ECF No. 153-1 at 2).
*Footnote continued on the next page…*

evidence that the on-the-books remedies were in fact unavailable to him or her." *West v. Emig*, 787 F. App'x 812, 814 (3d Cir. 2019) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018)). "If there is no genuine dispute of material fact, then the exhaustion defense may be evaluated as a matter of law at summary judgment." *Id.*[5]

### 1. Money Damages

The DOC Defendants contend that they are entitled to summary judgment on Plaintiff's claims for money damages because he failed to request a specific monetary amount in his grievances. Courts have held that in light of the mandatory nature of the language set forth above at DC-ADM 804 § 1.A.11.d regarding the requesting of "compensation or other legal relief normally available from a court," an inmate procedurally defaults any claim for money damages if he did not seek such relief in his grievance. *See, e.g., Wright v. Sauers*, 729 F. App'x 225, 227 (3d Cir. 2018) (citing *Spruill*, 372 F.3d at 233-35).[6]

---

[5] "[I]f there is a genuine dispute of material fact related to exhaustion, then summary judgment is inappropriate, and a court should provide adequate notice to the parties and hold an evidentiary hearing, or 'at least provide the parties with an opportunity to submit materials relevant to exhaustion,' before resolving those factual disputes." *Id.* (quoting *Paladino v. Newsome*, 885 F.3d 203, 211 (3d Cir. 2018)); *see also Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013). Plaintiff has filed a motion requesting an evidentiary hearing on exhaustion. (ECF No. 166). Because there is no genuine dispute of material fact that requires a hearing and the DOC Defendants' exhaustion defenses can be evaluated as a matter of law at the summary judgment stage, Plaintiff's motion for a hearing is denied.

[6] The Court of Appeals in *Wright* explained that in *Spruill* it had "rejected a procedural default claim based on an inmate's failure to specifically request monetary relief on a prior version of DC-ADM 804" that did not *require* an inmate to seek such relief in a grievance. *Wright*, 729 F. App'x at 227. It further explained that "[c]rucially…we also observed that—to the extent [the Prison] was dissatisfied with our ruling—the Prison could 'alter the grievance system to require more (or less) of inmates by way of exhaustion.'" *Id.* (quoting *Spruill*, 372 F.3d at 235). "Subsequently, the Prison amended its policy to include the mandatory language deemed lacking in *Spruill*." *Id.*

Defendants acknowledge that Plaintiff requested monetary relief in the grievance process (ECF No. 133 at 4-5) but contend that his "failure to request *a specific dollar amount* is fatal" and requires judgment in their favor on his claims for money damages. (*Id.* at 6) (emphasis added). Their argument is not persuasive. DC-ADM 804 § 1.A.11.d does not require that an inmate must set forth a certain dollar amount in his grievance. It requires only that if an inmate desires compensation, he must "request that specific relief[.]"

The decision in *Wright v. Sauers*, the case that the DOC Defendants quote in their brief, does not support their argument that Plaintiff was required to state a specific dollar amount in his grievances. The inmate in that case did not request any money damages in his grievance, which is why both the district court and the Court of Appeals held that he defaulted his excessive force claim. *Wright v. Sauers*, No. 13-358, 2017 WL 3731957, 4-7 (W.D. Pa. Aug. 30, 2017); *Wright v. Sauers*, 729 F. App'x at 227. In response to the defendants' argument that he procedurally defaulted his claim, the inmate in *Wright* asserted that the grievance process was "unavailable" to him because he was unaware of the severity of his injury when he filed his grievance and therefore, was unable to estimate the amount of monetary relief he was seeking. *Id.* at 7-8. In rejecting that argument, the district court observed that the inmate knew he had suffered an injury as a result of the alleged excessive use of force and that "knowledge was sufficient to prompt him to seek monetary relief in whatever amount he deemed sufficient at that time." *Id.* at 8. The district court did not hold, as the DOC Defendants suggest, that Plaintiff defaulted his claim because he did not request a specific dollar amount in his grievance, and neither did the Court of Appeals when it considered the case on appeal. Indeed, the district court in *Wright v. Sauers* expressly stated that pertinent issue before it was "whether [the inmate] sought monetary

damages at all, not whether he was able to state with specificity the amount of monetary damages to which he was entitled." *Id*.

As such, the DOC Defendants' contention that they are entitled to summary judgment on Plaintiff's claims for money damages is denied.

2.      Failure to Identify Cpt. Tift, Lt. Rohal and Sgt. Wiles in Any Grievance

Cpt. Tift argues that Plaintiff procedurally defaulted the Eighth Amendment claim Plaintiff brings against him because Plaintiff did not identify him in any grievance or grieve any act, or failure to act, by him.

As an initial matter, that Court notes that the Supreme Court has "identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Indeed, the "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id*. (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Therefore, "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.*

However, as previously explained, the pertinent inquiry in evaluating the merits of Cpt. Tift's argument is whether Plaintiff complied with the requirements listed in DC-ADM 804 § 1.A.11 because that is what "suppl[ies] the yardstick for measuring procedural default." *Spruill*, 372 F.3d at 231. This grievance policy required that in his initial grievance Plaintiff had to "include a statement of the facts relevant to the claim" and "*identify individuals directly*

16

*involved in the event(s)*." DC-ADM, § 1.A.11.b (emphasis added).

A review of the initial grievances Plaintiff filed at Grievance 679071 (ECF No. 134-1 at 29-30), Grievance 683299 (*id.* at 22), and Grievance 689031 (*id.* at 9-10) establishes that Plaintiff did not identify Cpt. Tift as being involved in the complained-of event. Thus, Plaintiff procedurally defaulted his claim against Cpt. Tift by failing to identify him in accordance with the mandatory requirement set forth in DC-ADM 804, § 1.A.11.b.

In an attempt to avoid this conclusion, Plaintiff directs the Court to statements he made in the *appeal* of the denial of Grievance 683299.[7] That is a grievance Plaintiff submitted on June 20, 2017 against Cowden within which he complained that she was deliberately indifferent to his medical needs for denying him medical care for his rib injury. (ECF No. 134-1 at 22). After that grievance was denied at the initial review response ("IRR") stage, Plaintiff wrote in his first level appeal that "corrections officers…whose names are unknown at this time" had refused to have him pulled out of his cell and that it "took over a month of continuously" reporting their misconduct "to force Cowden and the RHU Officers to pull me out to be examined at triage." (*Id.* at 20). But DC-ADM 804, § 1.A.11.b required that if Plaintiff had a complaint about RHU officers, he had to indicate that in an initial grievance, not in the appeal to the IRR. Thus, those statements did not properly exhaust the claim he brings against Cpt. Tift in this case. Moreover, there is no evidence of record that Capt. Tift was one of the unnamed "correctional officers" who refused to have Plaintiff removed from his cell to be examined. Rather, Plaintiff's Amended Complaint only identifies him as a supervisor who issues orders regarding escorting inmates from cells, not that he failed to do so here.

The Court of Appeals has held that if a prison disregarded its own procedures and addressed the claim at issue on the merits even though it was not brought in accordance with its grievance process, "both the purposes of exhaustion—and exhaustion itself—are satisfied." *Rinaldi*, 904 F.3d at 272; *id.* at 271 ("where a prison disregards its own procedures and rejects an inmate's otherwise procedurally defaulted complaint on the merits, the claim is 'properly exhausted' under the PLRA."). It explained:

> In *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000), despite the fact that the inmate had not completed a necessary step in the Department of Corrections' grievance process, we concluded that the prison had waived any exhaustion defense and "judicial consideration [wa]s open to [the inmate]" because the inmate's "allegations [had] been fully examined on the merits by the ultimate administrative authority," and therefore a "substantive determination [had been] made at the highest level." *Id.* at 281. Likewise, in *Spruill*, drawing on principles from habeas and administrative law, we reasoned that whether a prisoner had "properly exhausted" a claim must be determined by evaluating not only "the prisoner's compliance with the prison's administrative regulations governing inmate grievances," but also "the waiver, if any, of such regulations by prison officials." 372 F.3d at 222. *Thus, even though Spruill had failed to include the name of the relevant prison official, we held that the grievance office's acknowledgment of which prison official was involved had "excused any procedural defects in Spruill's initial grievances." Id.* at 234.

*Id.* (emphasis added).

Here, the grievance record reflects that Plaintiff's failure to comply with the mandates of DC-ADM 804, § 1.A.11.b with respect to his claim against Cpt. Tift was not excused by the prison in the grievance process. The allegation Plaintiff made regarding the unidentified RHU officers in his appeal from the IRR in Grievance 683299 was not examined on the merits, nor was Cpt. Tift acknowledged by the prison at any point as being involved in the complained-of incident.

---

[7] Plaintiff does not argue that the grievance process was unavailable to him.

This same analysis applies to both Lt. Rohal and Sgt. Wiles, who have joined in the motion for summary judgment of the DOC Defendants. Like Cpt. Tift, neither Lt. Rohal nor Sgt. Wiles is named in any of the grievances. The Amended Complaint only identifies them as supervisory officers who can issue orders to permit inmates to be escorted to triage. While it alleges generally that they denied or delayed medical care to Plaintiff, there are no facts in the record to support a conclusion that the unnamed correctional officers referenced in the appeal of a grievance relating solely to Cowden are either of these defendants. Moreover, while Sgt. "Miles" is mentioned in Grievance 683299 as someone to whom Plaintiff spoke, he makes no complaints about him; the grievance solely relates to the conduct of Cowden. Thus, the grievance record reflects that Plaintiff failed to comply with the mandates of DC-ADM 804, § 1.A.11.b with respect to his claims against Lt. Rohal and Sgt. Wiles and it was not excused by the prison during the grievance process.

Based upon the foregoing, because Plaintiff procedurally defaulted the claims he brought against Cpt. Tift, Lt. Rohal and Sgt. Wiles, summary judgment will be granted in their favor.

B.    Plaintiff's Eight Amendment Claim Against Grego

To establish his Eighth Amendment claim against Grego, Plaintiff must prove two things. First, he must make an objective showing that his medical needs were serious. *See, e.g., Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Grego does not contest that Plaintiff's fractured ribs were a serious medical need, nor did Cowden. Therefore, it is uncontroverted that Plaintiff had a serious medical need.

Second, Plaintiff must make a subjective showing that Defendant Grego was deliberately indifferent to his serious medical need. *See, e.g., Rouse,* 182 F.3d at 197. The Supreme Court has

described the state of mind deliberate indifference requires:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement *unless the official knowns of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw that inference.*

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). "[D]eliberate indifference is a subjective state of mind that can, like any other form of scienter, be proven through circumstantial evidence and witness testimony." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). It has been found "in a variety of circumstances," *Rouse*, 182 F.3d at 197, including where a prison official "knows of a prisoner's need for medical treatment but intentionally refuses to provide it[,]" or "prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), which cited *Monmouth County Correctional Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346-47 (3d Cir. 1987)).

As set forth above, Plaintiff avers that he wrote to Grego on "several occasions" and informed her that he needed her help because Cowden was denying him medical care. (Pl's Aff. 1, ¶ 4; Pl's Aff. 2, ¶ 12). He asserts that he sought her help because one of her job duties is to ensure that he received a medical examination. (*Id.*; *see also* ECF No. 153-2 at 2-10). In support, he cites the DOC's health care policy manuals that outlines the duties of the CHCA at its facilities. (ECF No. 153-2 at 2-10).

Grego does not dispute Plaintiff's assertion that he requested assistance from her on several occasions to address Cowden's alleged failure to treat his rib injury. Nor does she dispute Plaintiff's characterization of her job duties. Rather, Grego contends that the substantial level of

care provided to Plaintiff by Cowden shows that she (Grego) would have had no reason to believe that Plaintiff's medical issues were not being met. She argues that she is entitled to summary judgment because as an administrator, she was entitled to rely upon Cowden's expertise in the manner in which Cowden was treating Plaintiff. *Durmer*, 991 F.2d at 69 (affirming summary judgment in favor of two non-medical prison officials on the basis that "[n]either of these defendants…is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.").

It is true, as Grego points out, that "[i]f a prisoner is under the care of medical experts…, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill*, 372 F.3d at 236. However, a prison official may be chargeable with the Eighth Amendment scienter requirement of deliberate indifference if he or she had "a reason to believe (or actual knowledge)" that the medical personal "are mistreating (or not treating) a prisoner[.]"*Id.*

The Court has already held in its disposition of Cowden's motion for summary judgment that while Cowden disputes Plaintiff's version of events, he has adduced sufficient evidence that would allow a reasonable factfinder to conclude that: (1) he fell out of his bed on May 19, 2017 and reported his fall and rib injury to her on May 22, 2017; and (2) Cowden denied him treatment for his serious medical need for at some period of time (although perhaps for much less time than the approximately 39 days that Plaintiff alleged in the Amended Complaint). (ECF No. 180 at 13-16). Thus, pivotal inquiries in resolving Plaintiff's claim against Grego is *when* he first wrote to her complaining about Cowden, and *what* he complained to her about. For example, did

Plaintiff complain that Cowden failed to examine him, denied him any medical treatment for his rib injury, and as a result he was suffering severe pain? Or, did he merely complain about the treatment he was receiving from Cowden and/or that he wanted to see another medical provider? If it was the former, and if one or more of the instances in which Plaintiff wrote to Grego for assistance fell within the time period during which Cowden allegedly failed to examine him for his fractured ribs and/or was providing him with no treatment for his pain, a factfinder could conclude that Grego acted with deliberate indifference to his serious medical need during the time period as well.

As the moving party, Grego bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. She has not met her burden with respect to the above-cited inquiries. The record evidence is that Plaintiff wrote to Grego several times. The Request to Staff he submitted to her on July 19, 2017 (ECF No. 141-2 at 2), approximately one month *after* Cowden had examined and began specifically treating his rib injury, indicates that it was the third time he had written to her for assistance. By that date, Plaintiff was complaining that the pain medication Cowden had prescribed was not working and that he wanted to see another medical provider. Grego responded that he could not circumvent the sick call system and request a specific provider. Her response to the July 19, 2017 does not support a finding of deliberate indifference on her part, since by that date Cowden was treating him for his fractured ribs. However, the record lacks any evidence which addresses when Plaintiff made his first and second requests for assistance from her, what the substance of his complaint was, or how she responded to him. Without such evidence, the Court does not have before it the necessary information to conclude that she was not deliberately indifferent to a

serious medical need.

Thus, Grego has not met her burden to show that she is entitled to summary judgment with respect to Plaintiff's Eighth Amendment claim against her. Therefore, Grego's motion for summary judgment will be denied.

C.    The DOC Is Immune From Suit

The DOC correctly argues that it is immune from suit under the Eleventh Amendment, which precludes lawsuits against a state in federal court, regardless of the type of relief sought. *See, e.g., Lavia v. Pa., Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89 (1984). It is well settled that the DOC is an agency or arm of the Commonwealth of Pennsylvania and therefore, is entitled to the same Eleventh Amendment immunity which the Commonwealth enjoys. *Id.* While a state may lose its immunity by Congressional abrogation or by waiver, *id.*, Congress did not abrogate states' sovereign immunity when it enacted § 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989), and the Pennsylvania legislature has expressly declined to waive its sovereign immunity by statute. *Lavia*, 224 F.3d at 195; *see also* 42 Pa. Cons. Stat. Ann. § 8521(b).

Accordingly, the DOC is entitled to judgment in its favor as a matter of law because it has Eleventh Amendment immunity.

D.    Plaintiff's Claim Against Wetzel and Copazzo

In the Amended Complaint, Plaintiff indicated that he is suing Wetzel and Copazzo only in their official capacities. (ECF No. 31, ¶¶ 3-4). Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*,

473 U.S. at 165 (quoting *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658, 690 n.55 (1978)). Therefore, they should be treated as suits against the state. *Id.* at 166. "Because the real party in interest in an official-capacity suit is the government entity and not the named official, 'the entity's 'policy or custom' must have played a part in the violation of federal law.'" *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Graham*, 473 U.S. at 166, which quoted *Monell*, 436 U.S. at 694). "For that same reason, the only immunities available to the defendant in an official-capacity action are those that the governmental entity possesses." *Id.* (citing *Graham*, 473 U.S. at 167).

Plaintiff alleges that Wetzel, as the DOC's Secretary, "is responsible for making and instituting policies and procedures for all DOC facilities and ensuring that all facilities are in compliance with said policies and procedure." (*Id.*, ¶ 3). He also asserts that Copazzo, as the Superintendent of SCI Fayette, "is responsible for the overall running of the institution and making sure [it] is in compliance with all DOC policies and procedures,]" and supervising all of its employees. (*Id.*, ¶ 4). Plaintiff claims that they failed to correct one or more of the other defendants' actions and allowed them "to continuously violate DOC policies and procedures" by not utilizing the RHU triage room and instead maintaining a "blanket policy" of "conducting cursory sick call" visits at the cell door in the presence of other inmates. (*Id.* at p. 5 and ¶ 41). As relief, he seeks an injunction directing Wetzel and Copazzo to order "all DOC facilities to use medical triage rooms for sick call visits and cease all 'cell door' medical visits negating medical privacy and confidentiality issues." (*Id.* at p. 22, ¶ E).[8]

---

[8] In the next paragraph in the Amended Complaint, Plaintiff states that he is also seeking an "award of punitive, compensatory and nominal damages" but does not indicate whether he was *Footnote continued on the next page…*

24

Wetzel and Capozza argue that they are entitled to judgment in their favor as a matter of law on several grounds. They contend that Plaintiff procedurally defaulted the claim he brings against them because he did not name them in any of his grievances or grieve any acts, or failure to take any action, by them. Wetzel and Copazzo also contend that the DOC's Eleventh Amendment immunity extends to them to the extent Plaintiff is seeking damages against them in their official capacities.[9] Additionally, they contend that the allegations in the Amended Complaint are directed against them in their role as supervisors, and that Plaintiff cannot produce evidence from which a reasonable jury could hold them personally liable for actions taken by the other defendants.[10]

---

excluding or including Wetzel or Copazzo in his request for money damages (ECF No. 31 at p. 22, ¶ F).

[9] Plaintiff cannot sue state officials, such as Wetzel and Copazzo for damages in their official capacity under § 1983, because that is deemed to be the same as suing the state. *Graham*, 473 U.S. at 169. However, the Eleventh Amendment does not bar claims against a state officer in his official capacity for prospective injunctive relief or claims against state officials in their individual capacity for money damages. *Id.* at 167 n.14; *Hafer*, 502 U.S. at 30-31. But importantly, while claims against state officers in their official capacity for prospective relief are not barred by the Eleventh Amendment, "remedies are limited to those that are 'designed to end *a continuing violation of federal law.*'" *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (emphasis added) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

[10] "It is well-recognized that government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Barkes v. First Correctional Medical*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd sub. nom. on other grounds* 575 U.S. 822 (2015) (internal citations and quotations omitted). "Rather, state actors are liable only for their own conduct." *Id.* (citation omitted); *see also id.* (setting forth "the two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates.") In *Parkell v. Danbert*, 833 F.3d 313 (3d Cir. 2016), however, the Court of Appeals explained that the standard for supervisory liability does not apply in injunctions, so that a defendant's lack of "personal involvement in past constitutional violations does not preclude…prospective injunctive relief" against a defendant "for ongoing violations." *Id.* at 332. "In seeking a prospective injunction against the implementation of an unconstitutional state policy, [the plaintiff] is required to name [as a defendant] an official or officials 'who can

*Footnote continued on the next page…*

In his opposition to the arguments made by Wetzel and Copazzo, Plaintiff has disavowed any intention of seeking monetary relief, or that he is proceeding against Wetzel and Copazzo in their individual capacities. (ECF No. 153 at 9, "The plaintiff is suing defendant Wetzel (DOC) and Copazzo 'only' in their official capacity for injunctive relief."; *id.* at 15, "Plaintiff is not suing defendant Wetzel or Copazzo in their 'individual' capacities…. Plaintiff has made it clear in his amended complaint that he is suing both these defendants in [their] 'official' capacities for injunctive relief[.]"; *see also* Pl's Aff. 1, ¶¶ 11, 13, Plaintiff states that he is suing Wetzel and Copazzo in their official capacity for injunctive relief).

Turning first to Wetzel and Copazzo's exhaustion defense, the only relevant grievance is Grievance 679071. (ECF No. 134-1 at 29). That is the grievance in which Plaintiff complained that Cowden conducted sick call at his cell door and did not take him to the RHU triage room. Plaintiff stated that he was seeking an injunction requiring that all RHU sick call visits be conducted in the triage room. But, significantly, he did not identify either Wetzel or Copazzo as being involved in the event in question, nor did he challenge any prison policy or practice. (ECF No. 134-1 at 29). Rather, he contended only that Cowden was personally violating his rights by her actions. (*Id.*)

As set forth above, in order to properly exhaust a claim, DC-ADM 804 § 1.A.11 required that Plaintiff "include a statement of the facts relevant to the claim[,]" and "identify individuals directly involved in the event(s)." Additionally, DC-ADM 804 §1.A.13 put Plaintiff on notice

---

appropriately respond to injunctive relief.'" *Id.* (quoting *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013) and citing *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)). Importantly, to proceed with such a claim, however, a plaintiff must identify the "policy challenged as a constitutional violation[,]" *Hartmann*, 707 F.3d at 1127, *and the Footnote continued on the next page…*

that he could file a grievance if he was being "personally affected by a Department and/or facility action or policy[.]" Plaintiff did not comply with the requirements of DC-ADM 804; therefore, he did not exhaust his claim against Wetzel and Copazzo.

Plaintiff argues that he was not required to identify either Wetzel or Copazzo in his grievance or indicate that he was challenging a specific policy or procedure employed in SCI Fayette's RHU. This argument has no merit. In support of it, Plaintiff relies upon *Robinson v. Johnson*, 343 F. App'x 778 (3d Cir. 2009). In that case, the plaintiff was assaulted by another inmate, and that assault occurred in part because of procedures used by correctional officers at SCI Pittsburgh when they took RHU inmates outside to exercise. The plaintiff did not name two supervisory defendants (the then-Secretary of the DOC and the Superintendent of SCI Pittsburgh) in a grievance he had filed regarding the incident. *Robinson*, 343 F. App'x at 779-80. The Court of Appeals held that the version of DC-ADM 804 in place during the events in question in *Robinson* did not mandate that the plaintiff identify the two defendants. *Id.* at 781-82. In contrast, the current version of DC-ADM 804, which applies in this case, required that Plaintiff identify Wetzel and Copazzo or, at the very least, indicate that he was challenging a policy or procedure utilized by SCI Fayette in its RHU and not just that he was grieving misconduct on the part of one specific individual.

The Court of Appeals in *Robinson* further held that even if the plaintiff should have identified the two supervisory defendants in his grievance, the prison had excused his failure to do so. *Id.* at 782. It reached that conclusion because, in its response to the plaintiff's grievance, the prison had acknowledged that he was complaining about RHU procedures and advised him

---

*plaintiff must still be subject to that policy.* *Parkell*, 833 F.3d at 332-33.

that those procedures had been modified to prevent the type of injury that he had sustained as a result of them. *Id.* Nothing comparable occurred in Plaintiff's case. The prison treated Grievance 679071 as a complaint solely against Cowden throughout the grievance process. (ECF No. 134-1 at 23-28).

Thus, for the reasons set forth above, Plaintiff defaulted any claim he has brought against Wetzel and Copazzo. They are entitled to summary judgment in their favor for that reason.

However, Plaintiff's claim against Wetzel and Copazzo suffers from an even more fundamental problem. It is a claim for injunctive relief, and an inmate lacks standing to seek such relief regarding conditions in a particular prison or unit once he is transferred out of them unless the same conditions exist at the place to which he is transferred. *See Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (standing to seek injunctive relief requires a plaintiff to show, among other things, a likelihood of a future injury); *see, e.g.*, *Meuir v. Green Cnty. Jail Employees*, 487 F.3d 1115, 1119-20 (8th Cir. 2007) (prisoner transferred to state prison lacked standing to seek an injunction about dental care at a county jail); *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (transfer did not deprive inmate of standing where he challenged a statewide policy).

In his affidavit, Plaintiff states that he was housed in SCI Fayette's RHU from January 2017 through September 2017, and that he was incarcerated at SCI Fayette between December 2016 through April 2018. (Pl.'s Aff. 2, ¶¶ 1-2). Plaintiff does not allege in the Amended Complaint that the complained-of policy he contends is employed at SCI Fayette in its RHU is a DOC-wide policy or practice, or that it is in place at SCI Pine Grove, which is where he was housed at the time he filed the Amended Complaint and where he is presently confined. In fact, he alleges that Cowden violated DOC policy when she refused his request to be taken to the

RHU triage room to discuss his STD and treatments related to it. (ECF No. 31, ¶¶ 26, 32, 41; Pl's Aff. 2, ¶¶ 25, 28).

Thus, when Plaintiff initiated this civil action in February 2018, he had been out of SCI Fayette's RHU for approximately four months, and when he filed the Amended Complaint in June 2018, he was no longer confined at SCI Fayette. Therefore, he lacked standing to sue for the injunctive relief. To the extent that there could be any question about that holding, the separate but related doctrine of mootness applies, since Plaintiff is presently housed at SCI Pine Grove and, therefore, is no longer subject to SCI Fayette's challenged RHU policy. *See, e.g., Sutton v. Rasheed*, 323 F.3d 236, 248-50 (3d Cir. 2003) (when an inmate is transferred from the facility complained of, injunctive claims are generally mooted) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206 (3d Cir. 1993)); *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (mootness has been described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (internal quotation and citation omitted).

In conclusion, not only did Plaintiff procedurally default any claim he brought against Wetzel and Copazzo, he lacked standing to sue for the injunctive relief he seeks in the Amended Complaint. Alternatively, his claim for injunctive relief—which is the only claim he brought against Wetzel and Copazzo—is moot. Therefore, Wetzel as well as Copazzo, who Plaintiff named as an official who could respond to injunctive relief, are dismissed from this action.

## V. Conclusion

For the reasons set forth herein, the motion for summary judgment (ECF No. 132) filed by the DOC Defendants is denied in part and granted in part. Summary judgment will be granted

in favor of Wetzel, Copazzo, Cpt. Tift, Lt. Rohal, Sgt. Wiles and the DOC and against Plaintiff.

Grego's motion for summary judgment is denied. Plaintiff's motion requesting an evidentiary

hearing on exhaustion (ECF No. 166) is denied. An appropriate order will follow.

By the Court:

Dated:  March 27, 2020

PATRICIA L. DODGE
United States Magistrate Judge

cc:    ANTHONY SIDES
       MR1194
       SCI Pine Grove
       191 Fyock Road
       Indiana, PA 15701